Tilda **MEADE**, Committee on behalf of **Buster Damron**, an incompetent person, Plaintiff,

v.

**SALVATION ARMY**, a corporation of Georgia, Defendant.

No. 918.

United States District Court
S. D. West Virginia,
at Huntington.

Dec. 30, 1958.

Joseph D. Sadler, Milton, W. Va., for plaintiff.

Russell L. Daugherty, Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

This is an action by Tilda Meade, as the duly qualified committee for her incompetent son, Buster Damron, seeking cancellation of a deed made by Damron on August 23, 1949, on the ground that Damron was of unsound mind and incompetent to execute a deed on that date. The defendant in this diversity action, which has been heard by the Court without a jury, urges that Damron was sane and mentally competent on August 23, 1949, when it accepted the property from Damron as a gift by deed.

### Findings of Fact

I find that plaintiff has failed to carry the burden of proof in this case of show-

ing Damron's incompetency at the time the deed was executed.

Damron purchased the property in question for $8,000 on February 28, 1946. It consists of a lot and a two-story concrete block building, the downstairs of which was used as a beer hall and 5 rooms upstairs were used as living quarters. Damron, a recently-discharged veteran of World War II at that time, put up $2,000 down payment, obtained a $6,000 Government loan, purchased some new equipment, and went into the business of operating a tavern and pool hall. He was a successful operator, paying off his loan in approximately 2 years, and built up the business to the point where plaintiff places a conservative valuation of the property at $10,000 on the date Damron conveyed it to the defendant.

In February, 1948, Damron came to the conclusion that selling beer was not a very satisfying life's occupation, so he enrolled in Marshall College, at Huntington, West Virginia, where he matriculated for 5 semesters and 1 summer term, until June, 1950, receiving above average grades. During the period he was in college, he hired various people to operate his business in the property involved here, which is located in the community of Mallory, Logan County, West Virginia, some 90 miles from Huntington. But Damron became dissatisfied with the burdens of absentee ownership and with the small amount of money his business was bringing in, and he attempted to sell the property. After listing the property with two real estate agents, and personally advertising the property in newspapers, but having no offers to buy the property, Damron decided to give the property to some charity. Pursuant to this decision, he contacted the local officer of the Salvation Army in Logan, West Virginia, which is some 20 miles from Mallory, and asked if the Salvation Army would like the property. The officer stated he could not make the decision, but would have to look the property over and discuss it with his superiors. A few days later, the officer informed Damron that the defendant had

decided to accept his gift. An attorney in Logan was then contacted, and a deed drawn up whereby the Salvation Army agreed to pay Damron's 1949 taxes, agreed never to sell or lease the property to two named adjoining landowners (with whom Damron had had difficulties) and in which it is recited that the defendant paid Damron $1.

The reason given by Damron for making a gift of the property, at the time he first contacted the Salvation Army officer, was that he had used the property for a beer parlor, pool room, and a brothel, capitalizing on the weaknesses of the men in that small coal mining community, and he wanted to repay in some way for whatever damage he had done —plus the fact that he felt he could not successfully run the business and attend college 90 miles away at the same time.

There is no credible evidence in the record in this case approximating a preponderance to show the alleged incompetency of Damron on August 23, 1949. It is true that there is some evidence here that during the period he was in Marshall College, Damron received treatments through the Veterans' Administration staff doctors for sleeplessness, fatigue and other complaints, and in December, 1949, underwent an operation, a fulguration of the verumontanum. But his first visit to a psychiatrist was March 1, 1950, and on June 7, 1950, a psychiatric examination was given Damron for the purpose of a disability rating where the doctor found that Damron was mentally competent to receive monthly subsistence checks and did not initiate any action to obtain hospitalization of Damron. On August 24, 1950, Damron's condition had deteriorated to such a state that he was admitted to Fort Lyon, Colorado, Veterans' Administration Hospital and after a diagnosis of his condition at that time as schizophrenia, he was hospitalized eleven months and given 81 insulin shock treatments. However, it is to be noted that his entry in Fort Lyon Hospital was one year after the deed was executed and is no evidence that Damron was schizo-

phrenic at the time of the gift of this property. He was not adjudged mentally incompetent by a court until the present plaintiff was appointed his committee December 29, 1956.

Damron was represented in this Court by a guardian ad litem appointed by the Court, a lawyer who took an active part in the trial of this case.

### Conclusions of Law

1. This Court has jurisdiction of the parties to and the subject matter of this action.

2. The defendant is entitled to a judgment in this case that the plaintiff take nothing by reason of her complaint herein, with costs assessed against the plaintiff, including the sum of $50 as reasonable compensation for the services of the guardian ad litem appointed in this case by the Court.

Counsel may prepare a final order in accordance with the views expressed in this opinion.